Good morning. May it please the court. I'm Thad Blank from the Federal Defender Services of Idaho, representing Jason Bradford. Boise Police discovered a gun in Mr. Bradford's coat pocket after they conducted a pat-down search. The district court held, and the government does not dispute on appeal, that the pat-down search was conducted without reason to believe that Mr. Bradford was armed and dangerous. The search was unlawful and the gun should be suppressed. The issue here on appeal is whether the inevitable discovery doctrine excuses the constitutional violation. For two independent reasons, it does not. First, is the government did not put into evidence the record of the standard policies and procedures that would have led to the inevitable discovery of the firearm. Second, the doctrine does not apply because the inevitable discovery through the dog sniff is not sufficiently separate from the illegal frisk. Scalia I want to understand the second part of the argument. I understand the first part of the argument, which is the judge just supposed the normal investigative techniques and there was no evidence put in by the government about him. But as to the second part, assuming they hadn't done a pat-down, they were still going to conduct the drug sniff of the car, were they not? The pat-down didn't lead to the drug sniff. Bradford That's right. I can't argue that. I mean, there's no doubt. Scalia So that, I'm trying to understand, flesh out the second part of your argument. I'm having difficulty understanding it. It seems to me that even absent what Judge Windmill, it was Judge Windmill in this case, what Judge Windmill thought was an illegal pat-down, and the government doesn't challenge that. Even absent that, the rest of the events would have proceeded, which is to say that the dog would have alerted, there would have been a search of the car, the methamphetamine would have been found, the officers knew that your client had left a place they were surveilling. So, again, put aside the initial illegality, why wouldn't all that have occurred anyway? Surely the record establishes that. The record doesn't establish that they were going to walk away if they didn't pat him down. Bradford That's right. We're not contesting, we're not arguing that the motive for the dog sniff was what was discovered in the pat-down search. The record shows, rather, that the pat-down search was the first chapter. Sotomayor Right, but it doesn't lead to the, the pat-down search is not a causal effect of the dog sniff, is it? Bradford It is a means to facilitate the end of the dog sniff, is what the testimony in this case was. Sotomayor But that's why I'm asking, because that argument confuses me. The dog sniff, they were, the dog was there and the other officer was there just at, almost just simultaneously with the pat-down, right? Bradford Pretty quick. Sotomayor They were going to conduct that sniff whether or, whether or not your client was patted down. Isn't that true? Bradford They, they wanted to conduct a dog sniff. Sotomayor Right, and patting him down didn't give them any reason to think there were drugs in the car. It only gave them reason to think that he was armed. So, so that sniff was going to occur anyway, is my, is, is what's giving me difficulty with the second part of your argument. Bradford I guess our factual argument is that the sniff was not going to occur without Officer Green attempting to do the pat-down search that in this case was unlawful. Sotomayor That's your argument, but I'm having difficulty figuring out why the record supports that. Bradford Why the record supports that? Well, here's kind of our, the legal framework for our argument. In these exceptions to the exclusionary rule, there's a continuum in this Court's cases. There's the independent source doctrine where there's a police investigation wholly unrelated to the unlawful police conduct that results in the discovery of the evidence. The other end of the spectrum, there's the search warrant cases where police had probable cause to get a search warrant, and if they had followed their standard procedures and practices, they could have, and they would have inevitably discovered the contraband, but they simply chose not to. And in those cases, this Court says it doesn't matter that they could have found the evidence through acting in a lawful manner. The reality is that they did act unlawfully, and, and that's how the evidence was discovered. Sotomayor But, but, but the problem is that there are unlawful actions here, if they were unlawful, I'm assuming for the moment that they were, don't seem to have any cause. They were, they'd shown up with a dog and they were going to sniff that car, period. There's no suggestion that, that the finding of the gun on your client led them to sniff the car. Well, that's right in terms of motive, but I, I think the factual tether is the testimony of the judge's finding and the, and supported by the factual testimony that this was how Officer Green approached the dog sniff. The, the Court's explanation is, quote, Officer Green testified that he patted down Bradford because he was about to cut, conduct the dog sniff, and then that's Officer Green's testimony when he's describing his normal practices, that he is going to And, and you infer from that that if he'd not patted him down, the dog sniff would not have, would not have gone forward? No. I don't, I don't think that's right, but I don't think the evidence is strong enough to support that. Yeah, I don't think so either. That's why I'm asking. Can you give me your best case for your argument that the frisk and the dog search were too inextricably intertwined for inevitable discovery to apply? I think I would give you two cases. One is Boatright, which is sort of this, the beginning of this legal doctrine, and that's that it, it describes how there doesn't have to be an independent source, but there's still a factual inquiry as to whether the fact that makes the discovery inevitable arises from circumstances other than those disclosed by the illegal search. And then the other case that I'd cite to is, is this line of warrant cases that I've tried to create this continuum with, with Judge Hurwitz. So the one that we cite here is, is Riley or, for instance, Young. Well, but I just, isn't the question we ask when we're figuring out if the doctrine implies whether the fact that makes discovery of the evidence inevitable is born of circumstances other than those brought to light by the illegal search itself. And here, the facts that make discovery of the handgun inevitable, the presence of the drugs in the car, wasn't brought to light by the initial frisk. So I'm trying to figure out, how do you get around that? Again, I think that the cases support, it's not just merely a question of whether there was an independent motive to conduct what is termed the inevitable discovery, but whether the circumstances of what we're deeming the inevitable search is related to the illegal search. And in this case, same officer, a legal search precedes the purportedly lawful search by a matter of seconds. And the testimony is that this is the, this is the routine practice. From a, I guess, a policy perspective, this is an instance in which the purposes of the exclusionary rule should come to bear. It's the officer conducted this course of conduct in a fashion that violated Mr. Bradford's rights, and it makes sense to apply or to suppress the evidence to deter this type of police misconduct. If the search had revealed no weapon, is there any evidence in this case that the dog sniff wouldn't have gone forward? No. So you're saying that the standard you would apply is not whether it's born out of the illegal search, but just related to the illegal search? I don't think the warrant cases would get you there, because those are always born out of. Well, in, in many of those cases, there's testimony, there's, there's, there's the argument that, that, for instance, Young, the government's argument was that, that they could have conducted surveillance and obtained the warrant. They had everything they needed to obtain the warrant. They normally would go through that process. They just chose not to proceed lawfully. So I don't think that that line of case is always, that the basis for those rulings is that the motive to get the warrant is the evidence discovered in the room. It's, they've got probable cause. They can do it the right way or the wrong way. And they choose to do it the wrong way. And we're not going to, we're going to apply the, the suppression rule, the exclusionary rule in those instances. And that's what happened here. Could it end the search the right way? Didn't do it the right way. Begin it with an illegal pat-down search, the, the suppression of the gun is warranted. Say, before your time's up, but say we agree with you that the government didn't carry their burden here. I understand your argument that they shouldn't get another, I think it's a bite at the apple as you call it. But let's say just for a minute that we disagree with you on that and we're inclined to remand it. I just, I'm trying to figure out, do you want, do you really want us to remand for the government to proffer that the officer would have searched Mr. Bradford's incident to arrest, or can we just assume those facts here? Well, I think that you're saying accepting that it's appropriate to remand with an open record, which is not, not our position. But I, I do think it's appropriate to remand to develop the factual record. That there's, there needs to be evidence that Mr. Bradford would have been detained in a fashion that guaranteed that when he was arrested the firearm would still be on his person. There needs to be evidence that he would have been arrested if these drugs had been found, and there needs to be evidence that he would have been searched incident to arrest. So that first point is one which I think that there needs to be a factual record for that. Because Boatwright and Young, for instance, are cases where this court says we can't presume that the contraband is still going to be there at a later time if the government did this the right way. I don't, there's not evidence of how he would have been detained or where he would have been sent if, if the, this hadn't started with the illegal pat-down search. And that they would have searched the car? Well, there was testimony that the car would have been searched. Oh. So you, you start from the presumption that methamphetamine would have been discovered in the car, even in the absence of this pat-down? We concede that. We concede that, that this methamphetamine would have been discovered in the, in the car. Okay. Thank you. May it please the Court. Kate Horwitz for the United States. Judge Hurwitz, I'd like to start with the record at excerpts of record 59. And this is, there are four pages of testimony on this particular excerpts of record page. But the record shows that the pat-down search was not part and parcel or, quote, a routine that was pre, that was going to happen regardless of the search. On line 23 on page 72, defense counsel asks, that is a given in those cases you are going to do a pat-down search. Officer Green responds, not necessarily every time, no sir. And then it continues on where Officer Green says that he would attempt to do so. Now, the portion that the appellant cites in his brief is line 19 through 22 on page 73. And that simply does not support his factual case right now that it would have happened. Yeah. Let me tell you what troubles me about this case. First, I start off, you don't challenge that the initial pat-down was illegal? No. So I guess we, I'm mystified by that decision on your part, but it's your decision. There's nothing in this record that suggests that the gun would have inevitably been discovered. Common sense suggests it would have inevitably been discovered. We all have been around the block more than once, and we know that when you find a bunch of methamphetamine in somebody's trunk from somebody who's left a surveilled drug house, you're pretty likely to arrest him. And when you arrest him, sooner or later, you're going to search him. That seems to be routine police practice. But it was your burden to establish inevitable discovery. Are these facts that are subject to judicial notice? You put on, if your officer had said what I just said, we'd have a record. But we don't. We have an experienced district judge who knows what usually occurs who's, who made your case for you. That's problematic to me. So respond to that. Certainly, Judge Hurwitz. So I understand your position. The trial attorney in this litigation was juggling nine different issues that were raised during the suppression litigation. And best practices, this testimony would have been directly elicited from Officer Green during his testimony. Now the record, I respectfully disagree that the record doesn't support Judge Windmill's finding that the firearm would have inevitably been discovered. And I'll point the court to the fact that he was in fact search incident to his arrest, and that's at excerpts of record 66, that Officer Green asked another officer to, quote, double check his search incident to arrest, and that's at excerpts of record 323. And of course, we know that a lawful arrest allows a full search of the person. I will point to excerpts of record 325 and 327, which show that Mr. Bradford possessed five grams of methamphetamine, which were tested that night by Officer Green and submitted to the Idaho State Laboratory that night. And excerpts of record- That fact right there, that lawful arrest 325 and 327, but it doesn't say, I mean, 325 and 327 say that they got drugs from him. Correct. And then excerpts of record 313, 320, 322, and 327 are the underlying reports of the officers, which showed that he was contemporaneously arrested for both the firearms offense and the controlled substances offense, which is possession with intent to distribute. He had baggies, he had a digital scale. And that under Idaho Code 372732 shows that it was a felony. Yeah, now let me be more specific. What in the record establishes, and I think common sense tells me this, but I don't know it, that he would have been arrested even in the absence of them knowing that he had the firearm? Correct, Your Honor. We don't have any direct testimony elicited from the officer on that particular point. I think it's a fact that has to be extrapolated from the underlying facts before the district judge. If the search was illegal, they couldn't have arrested him for possession of the firearm. So now what I'm looking for in the record is some indication that because he possessed 5 grams of methamphetamine, or what appeared to be methamphetamine, they would have arrested him anyway. That's the difference. And you don't have an officer testifying or an affidavit or even a proffer from the prosecutor from the podium saying, Judge, we could put on Officer so-and-so and say that he would have arrested him. No, Your Honor. There's nothing like that in the record. Correct. So that's, I guess, one of my concerns here, or one of the questions I have. What do we do if we don't have that? Well, Your Honor, I would just . . . Do we give you a pass? No, Your Honor, no. Okay, so send it back? Yes. Well, first I'd like to point out that this is a Rule 11a2 conditional plea and that the way that the rule operates, it allows the defendant to withdraw his guilty plea should this court find his appellate arguments persuasive. So we would ask that the function of the rule just be allowed to be exercised normally and remand. But additionally, we had an alternative, kind of more complicated Rodriguez argument before the district court in response to the motion in limine that the district court specifically did not rule upon because he found the inevitable discovery doctrine applicable. I'll also point out at this point that we only had to prove by a preponderance before the district court, and now it becomes a clearly erroneous standard. And I think the citations that I previously provided rebut that it was clearly erroneous. I think best practices, absolutely, we should have elicited that direct testimony from the officer. That wasn't done here. But the facts before the district court, the video that was played in Exhibit G in the first hearing, which was the actual interaction between Officer Green and the defendant, fully support the clearly erroneous standard here. So I'm trying to understand the remand issue here. Your friend says, look, you had your shot at showing inevitable discovery, assuming you didn't, you know, we don't give you a second shot to go back and get more evidence or do it better. What's your response to that? I think that that's a fair point. Now, the cases that he actually cites in his reply, the first three were remanded under the normal operation of Rule 11A2. Now, the second question, whether or not an evidentiary hearing is actually reopened, the Kithcart case, the Fourth Circuit case that he cites, kind of gives that discretion to the trial court. They're the ones that have heard five hours of evidentiary hearing on this issue. They are allowed to kind of exercise their discretion and decide whether or not the government can offer additional evidence. So we can say, no, you didn't establish inevitable discovery. We're remanding the case to the district court to proceed further. Yes. And the district court can, in your view, then say, all right, let's reopen the hearing and put more evidence in. Absolutely, Your Honor. It's up to this court's discretion and then the district court's discretion whether or not to reopen the evidentiary hearing. I cut off Judge Stain. I'm sorry. No, I was going to shift a little bit back to the facts and the substantive issue. How do we know that even if he had been searched at that later point in time, that he inevitably would have still had possession of the weapon? In other words, he was searched at an early point in time. He was searched right away, before the dog sniff. That was while, presumably, he was still detained for the traffic stop. We just had a case here about a traffic stop. We know those detentions are relatively brief. So let's say the first officer finishes whatever traffic violation there was. He's no longer detained, right? How do we know his detention would have lasted as long as it took for the dog to sniff, for that later point in time? If he was not detained, he could have done what a defendant in one of our earlier cases did, which was walk away from the scene. You can walk away from the scene. You can come back. And while he was not detained, he could have disposed of the weapon. So how is that not a scenario that calls into question inevitable discovery? Right. So your question kind of speaks to our first response to the motion in limine, which was, had the routine traffic procedures been continued, the time frame would have encompassed the dog sniff. That was our first argument that the district court did not rule upon. The overall time from the initial stop to the dog sniff was 12 minutes. We know that there was approximately less than five minutes between when Officer Green actually did the illegal pat-down and the subsequent canine search. So there is an open, unanswered, factual kind of question as to whether or not the traffic stop would have extended beyond that 12-minute period. I will point you to the record of... If that's an open question, how could we ever say inevitable discovery here then? I mean, if we don't know how long the detention would have been, if the district court hasn't even resolved that, then how do we know that the gun would have been in his possession after the search, after the discovery of the drugs, and at some later search incident to arrest? Right. So Officer Tyner testified that he would have contacted Mr. Bradford's parole officer before he allowed him to leave, and he would have checked to make sure that Mr. Bradford didn't have an arrest warrant for his probation. That is excerpts of record 111 and 116, and 119 through 20 is when he discusses his parole status and that he's on the highest level of probation. Between that and the other normal, routine, traffic-related activities that Officer Tyner had left to do, which was call the probation officer, check the registration, finish filling out the ticket, and then looking up the code as well as explaining the ticket to Mr. Bradford, it's perfectly within the record for this court to find that that five minutes would not have allowed Mr. Bradford to leave. Even though the district court never made any of these findings, right? Correct, Your Honor. So we can't, you're saying, you're not asking us to make those findings, are you? I mean, doesn't, don't they involve somebody believing somebody about how long a traffic stop normally, I mean, you saw how much trouble we had in the case before us. We can't take judicial notice of how long it normally takes to process a traffic stop. No, Your Honor. But I think when we review the record and the district court's factual findings that support the application of the inevitable discovery doctrine, that this record supports the district court's factual findings as it applies to that doctrine. And I see my time is up. We would ask this court to affirm the district court's ruling. Thank you. Thank you. I'll give you a couple minutes. Thank you, Your Honor. I'll try and make three points. One is the point that I think Judge Staten made for me, which is that another piece of whether or not the detention ended is what's the normal policy and procedure for detaining somebody in this circumstance where a firearm isn't found? Would he have been directed to move away from the car and sit on the guardrail? And would he have had the opportunity to dispose of the contraband? We're just speculating that he would have been detained in a fashion, regardless of whether, how this proceeds, whether that would have allowed the police to discover the contraband if they inevitably searched him. Second, the proper remedy here is a reversal. It's vacate the conviction and direct the district court. Well, except your friend says, look, we had another argument that the district court never reached because he ruled for us earlier. Don't they get to make that argument? Well, it's — I don't understand how that argument could resolve this question. The fact that the seizure wasn't unlawfully prolonged, which is the lingering issue, how could that — No, you see, there's two different seizure issues here, if you will. There's a seizure of his body and there's a seizure of the gun. And so what they're saying is, even if we hadn't patted him down because we stopped him for a traffic violation, it would have taken us five minutes to do the normal traffic violation calls here. And during that five minutes, we inevitably — we would have discovered, because the dog alerted very soon, that there were drugs in the car. And thereafter, the following things would have occurred. Now, they still wouldn't have shown — there's still nothing here that shows what they would have done in terms of searching him. But that's an argument that they didn't get to make because the judge never got to it. Why don't they get to make it? Well, because they had the same incentive to put the evidence on in the first go-around as they would in the second go-around. The inevitable discovery issue was presented in the evidence. But they said they did put the evidence on. They put in evidence about how long a search ordinarily lasts and when the sniff would have occurred. But the judge never evaluated that evidence because he didn't think he had to get to it. But their fallback argument was, assuming the judge — was that the inevitable discovery doctrine applied. And that's what essentially the government's asking for now, is the Court to remand, to give them an opportunity to describe or to put in evidence of what the procedures would have been. Which we have done. Which we have done in the past in other cases. We've either made the assumption or we've sent it back. So I'm just trying to figure out why wouldn't we do that here. Or, I guess, what's been highlighted by Ms. Horowitz is you all go back to, you know, the plea here, or what was the circumstances of your plea, or the conditions of your plea? It's a Rule 11 plea. I don't understand how that — or I don't see that that changes the nature of the remedy in the case. I mean, the problem is that there's a failure of proof on the government's part after a full opportunity to put on evidence. They are describing another reason or incentive why they would have to flesh out the inevitable discovery doctrine. That's the same posture as it was in the first sentence. Back at the far end, the link that we would have searched in, et cetera, et cetera. Right. Right. It plays out the same way. They had the same incentive. They had the same opportunity. That's the adversarial process. They didn't put on the evidence necessary to sustain their burden. And the proper remedy is to vacate and direct the district court that has a legal matter and factual matter that there's not evidence to support its ruling. All right. Thank you very much. Thank you both for your arguments here today. The case of the United States of America versus Jason Bradford is submitted.
judges: Murguia, Hurwitz, Staton